RAILROAD CO. *v.* BRUNDIGE *et ux.*

(*Nashville.*   December Term, 1904.)

1. **CONTRACTS.** Mental capacity to make, is question for court and jury to determine.

   The degree of mental capacity which the party whose act is called in question must have, to enable him to make a valid contract, is a question of law for the court to decide and whether such party has the required degree is a question of fact to be found by the jury from all the evidence; and the opinions of the witnesses are not competent evidence to determine either point.

   Cases cited and approved:   Gibson v. Gibson, 9 Yerg., 329; Kirkpatrick v. Kirkpatrick, 1 Tenn. Cas., 258; Wisener v. Maupin, 2 Bax., 358; Brown v. Mitchell (Tex. Sup.), 36 L. R. A., 64; Runyon v. Price (Ohio), 86 Am. Dec., 462; Van Zandt v. Ins. Co., 14 Am. Rep., 223; Walker v. Walker's Executor, 34 Ala., 469; White v. Bailey, 10 Mich., 159; May v. Bradlee, 127 Mass., 414.

   Case cited and distinguished:   Poole v. Dean, 152 Mass., 589.

2. **EVIDENCE.** Opinions of physicians inadmissible to determine contractual capacity. Case in judgment.

   The mental capacity of the female plaintiff to execute a contract compromising the litigation, was practically the sole point in issue.  There was proof showing that the compromise contract was executed by the wife at the request and in the presence of her husband.  Evidence was offered by the defendant to show the existence of contractual capacity, to rebut which plaintiff offered the testimony of two physicians, which was admitted over apt objections of defendant, that in their opinion plaintiff was not in a condition to make a contract.  Other facts shown made the case critically close upon the determining issue.

*Held*:   That the admission of the opinions of the physicians as
to the mental capacity of the plaintiff, which was a question to
be determined by the court and jury, was prejudicial error and
ground for reversal.

See cases cited and approved under headnote 1.


FROM FRANKLIN.


Appeal in error from the Circuit Court of Franklin
County.—S. D. McReynolds, Judge.

Claude Waller, Lynch & Lynch and W. B. Lamb,
for Railroad Company.

Estill & Littleton, for Brundige et ux.


Mr. Justice Shields delivered the opinion of the
Court.

Mrs. W. S. Brundige, her husband joining her, sued
the Nashville, Chattanooga & St. Louis Railroad Com-
pany for the recovery of damages for injuries sustained
by her in a collision on its road; she being a passenger
on one of the colliding trains.

The railway company pleaded not guilty and accord
and satisfaction; the last plea being based upon a com-
promise made with Mrs. Brundige June 14, 1902, two
days after the accident.   Mrs. Brundige replied to this
plea that at the time the compromise was made she was

suffering from a profound mental shock and nervous prostration, caused by her injuries, and was incompetent to make a valid contract, and repudiated the settlement and tendered back the money paid her. Issue was joined upon this replication.

The railway company upon the trial did not seriously controvert that Mrs. Brundige was injured through its negligence, and the contest was narrowed to the question of whether she had sufficient mental capacity when the compromise was made to make a valid contract. There were verdict and judgment for the plaintiff below, and the railway company brings the case here, and assigns as error that there is no evidence to support the verdict; that the damages adjudged are excessive, and the result of prejudice, passion, and caprice upon the part of the jury; and the admission, over objection, of certain testimony of the plaintiff's witnesses Dr. Zurmehly and Dr. Spiller, to the effect that she did not have sufficient mental capacity to transact business and make a contract.

The determination of error last assigned will be decisive of the case.

The questions propounded to these witnesses, and their answers, are as follows:

Dr. Zurmehly:

"Q. State whether or not, at the time you speak of seeing Mrs. Brundige, you would say that she was in any condition to transact business or make a contract?

"A.  I should judge not.  Of course, that is a matter of opinion."

Dr. Spiller:

"Q.  In your opinion, was she in a condition, when you saw her on the second visit you refer to, on June 13th, to make a contract or to transact a business matter?

"A.  I should judge not."

Counsel for the railway company objected to this testimony on the ground that it was the conclusions of the witnesses, and the question of plaintiff's mental capacity to make a contract or transact business was not a matter for the witnesses to pass on, but a question for the court and jury to determine.  These objections were overruled, and the testimony permitted to go to the jury.

This was error.  The testimony was clearly incompetent, and should have been excluded.  The degree or quantum of mental capacity which the party whose act is called in question must have, to enable him to make a valid contract, is a question of law for the court to decide, and whether said party has the required quantum is a question of fact to be found by the jury from all the evidence; and the opinions of witnesses are not competent evidence, in cases of this kind, upon either point.  The mental capacity of the plaintiff to contract was also the direct point—practically the sole point—to be decided by the court and jury; and the admission of this testimony was, in effect, a substitution of the

opinion of the witnesses upon both the law and the facts of the case for that of the triers provided by law to determine them. This cannot be done. The testimony of witnesses must relate to the facts, and it is the province of the court to determine the law, and the jury the ultimate facts. Witnesses, in cases involving mental capacity, after stating the facts within their knowledge, may give their opinion, formed from those facts, of the soundness or unsoundness of the mind of the party in question, but cannot be permitted to express an opinion whether such party had sufficient mental capacity to make a contract or execute a will, as the case may be. There seems to be but little or no conflict in the authorities upon this subject.

In *Gibson* v. *Gibson,* 9 Yerg., 329—a contested will case—the witness was asked: "Whether from the situation in which he saw the old man on that morning, and from the facts he had just stated to the jury, he believed the old man was then in his senses and capable of making a will?" This court, in approving the action of the trial judge sustaining an objection to the question, said: "The latter part of the question—capable of making a will—as it involved a question of law and fact and the very question to be determined by the jury, was entirely illegal."

In *Kirkpatrick* v. *Kirkpatrick,* 1 Tenn. Cas., 258, it is said: "The court erred in permitting certain witnesses to state their opinion as to the testator's mental capacity to make a reasonable disposition of his prop-

erty. This was a mixed question of law and fact, and the very inquiry to be determined by the jury upon the facts."

And again, in the same case, it is said: "The witness cannot be asked a question, the answer to which involves a matter of fact, as whether the testator is capable of making a will."

This was also held in the later case of *Wisener* v. *Maupin*, 2 Baxt., 358.

The rule is well and correctly stated by Mr. Pritchard, in his valuable work on Wills and Administration, section 106, in these words: "Attesting witnesses, and they only, are permitted to give their opinions, merely, without stating facts upon which they are based. But neither an attesting witness, nor any other, can be asked or allowed to state whether or not the testator was capable of making a will, or, what is the same thing, whether he was of disposing mind and memory. That involves a question of law for the court to settle, as to the quantum of mental capacity necessary to enable a person to make a legal disposition of his estate."

In the well-considered case of *Brown* v. *Mitchell* (Tex. Sup.), 31 S. W., 621, 36 L. R. A., 64, in holding that witnesses cannot be permitted to give their opinion of the mental capacity of a person to make a will or contract, the supreme court of Texas says:

"The negative of this proposition is that no witness, whether he be a subscribing witness, an expert, or a

nonexpert, wll be permitted, over objection, to state his opinion of the capacity of the testator or the maker of a contract to make such instrument when the opinion assumes the shape and has the effect of being an opinion upon the legal capacity of the party in question."

Other authorities to the same effect are *Runyan* v. *Price* (Ohio), 86 Am. Dec., 462; *Van Zandt* v. *Life Insurance Company,* 14 Am. Rep., 223; *Walker* v. *Walker's Ex'r,* 34 Ala., 469; *White* v. *Bailey,* 10 Mich., 159; 1 Greenleaf on Evidence, sec. 440.

All the cases from which we have quoted and have cited, it is true, involved the testamentary capacity of testators, but the principle upon which they were decided applies with equal force to cases involving the mental capacity of parties to contract. The testimony, whether it relate to a will or contract, is the opinion of the witness of the capacity of the party in question to do the act attacked as invalid, and which is the direct point in issue, and to be determined by the court and jury. In both cases a mixed question of law and fact is involved, and the admission of such evidence is to substitute the opinions of witnesses for the judgment of the court and jury upon these matters. The case of *Bruce* v. *Beall,* 99 Tenn., 303, 41 S. W., 445, in which the judgment of the trial court was reversed for error in permitting an expert witness to give his opinion on the matter to be decided by the jury, is also in point. It is there said: "While the general rule is that witnesses must speak to the facts, yet, upon questions of skill and

science, men who have made the subject-matter of investigation the object of their particular study are competent to give their opinion in evidence. But they will not be permitted to state their opinion upon any point the jury has to decide. Deductions from facts belong to the jury, and, when the examination extends so far as to substitute the opinion of the witness upon the very issue in controversy for that of the jury, the province of that tribunal is unwarrantably invaded."

The case chiefly relied upon by the defendants in error to sustain the action of the trial judge in admitting this testimony is that of *Poole* v. *Dean*, 152 Mass., 589, 26 N. E., 406. While there is in one part of the opinion a statement that tends to do this, yet, when the entire opinion is considered, it is not in conflict with our cases; and the case of *May* v. *Bradlee*, 127 Mass., 414, is clearly in accord with them.

This testimony was clearly prejudicial to the plaintiff in error. The compromise pleaded had been made by Mrs. Brundige in the presence and by the request of her husband, and acquiesced in by them for some time; and there was much in their testimony tending to show that Mrs. Brundige had the capacity to make the contract, and fully understood and assented to it, which, with other potent facts testified to by the witnesses for both parties, made the case critically close upon this issue for the defendants in error. The incompetent testimony had been called sharply to the attention of the jury by the objection made to it and overruled, was upon

Railroad v. Brundige et ux.

the direct point being tried, and necessarily must have had great weight with the jury in arriving at its verdict.

It is not necessary to pass upon other errors assigned, as for this one the case must be reversed and remanded for a new trial.